IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THOMAS EARL CRAIN**                                                                                             **PLAINTIFF**

v.                                                  CIVIL ACTION NO.  1:14-cv-144-HSO-JCG

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*                                                **DEFENDANT**

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), the claimant Thomas Earl Crain seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Crain presents two issues for review: (1) whether the Commissioner failed to properly consider and weigh the medical opinion evidence, and (2) whether the Commissioner failed to adequately develop the record.

Acting on behalf of the Commissioner, the Administrative Law Judge (ALJ) found that Plaintiff was not disabled within the meaning of the Social Security Act from June 1, 2006, the alleged onset date, through December 31, 2011, the date last insured. (ECF No. 15, at 18).  The ALJ determined that Plaintiff was capable of performing the full range of medium work – which includes his past relevant work as a cleaner – as defined in 20 C.F.R. § 404.1567(c).  Because the undersigned finds that the ALJ applied the correct legal standard and that the ALJ's decision is supported by substantial evidence it should be affirmed. Accordingly, the undersigned submits this Report and Recommendation to the District Judge,

1

recommending that Crain's Motion for Summary Judgment (ECF No. 17) be DENIED and the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL BACKGROUND

Plaintiff was 50 years old on his amended alleged disability onset date. (ECF No. 15 at 25). He graduated high school and completed two years of college. *Id.* at 25-26. For twenty-six years, he worked as a janitorial cleaner for the Mississippi Port Authority. *Id.* at 164. On August 10, 2011, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning July 1, 2005. *Id.* at 18. The claim was denied initially on August 12, 2010 and upon reconsideration on January 10, 2011. *Id.* He subsequently requested a hearing before an ALJ, and a hearing was held on September 19, 2012 in Gulfport, Mississippi. *Id.* At the hearing, Plaintiff amended the alleged onset date to June 1, 2006. *Id.* By Order entered on September 27, 2012, the ALJ held that the Plaintiff was not entitled to a period of disability, disability insurance benefits, or supplemental security income. *Id.* at 18-26. Plaintiff requested review of the decision by the Appeals Council, which was denied on October 15, 2013. *Id.* at 9-12. Accordingly, the ALJ's September 27, 2012 decision became the Commissioner's final decision and is now subject to judicial review under 42 U.S.C. § 405(g).

## II. THE ALJ's FINDINGS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant throughout the first four steps of this five-step

process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities ...." *Id.* § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. *Id.* § 404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. *Id.* § 404.1525.

Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. *Id.* § 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work. *Id.* § 404.1520(f)(1). If the Commissioner proves that other work the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Crain did not engage in substantial gainful activity from his alleged onset date of June 1, 2006 through his date last insured of December 31, 2011. At step two, the ALJ found that Crain suffered from two severe impairments during the relevant time period: diabetes and hypertension. However, the ALJ found that Crain's kidney and liver problems did not constitute severe impairments. At step three, the ALJ found that Crain's impairments or combination of impairments did not meet or equal any impairment for presumptive disability listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. Next, the ALJ found at step four that during the relevant period, Crain had a residual function capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). Accordingly, the ALJ determined that Crain was able to perform his past relevant work as a cleaner – which the vocational expert classified as medium exertionally – as actually and generally performed. Though not necessary, the ALJ proceeded to step five and concluded that in the alternative, there was a significant number of other jobs classified as medium exertionally in the national economy that Crain could have performed through the date last insured. (ECF No. 15, at 20-26).

### III. DISCUSSION

#### a. Standard of Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,*

4

402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell,* 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994).

    b. <u>Analysis</u>

Plaintiff alleges that the ALJ committed reversible error by failing to "adequately develop the record" and "failing to properly consider and weigh the

medical opinion evidence." (ECF No. 18, at 1). Specifically, Mr. Crain asserts that the ALJ (1) "failed to investigate and accurately articulate the facts" related to impairments found non severe and to Mr. Crain's credibility, and (2) improperly weighed the medical opinion evidence by "erroneous[ly] presume[ing] that no treating doctor gave [Mr. Crain] any limitations." *Id.* at 6, 12 (third alteration in original) (internal quotation marks omitted). The Commissioner responds that, to the contrary, (1) the ALJ properly developed the record by taking testimony at the administrative hearing and obtaining and reviewing pertinent medical records, and (2) the ALJ carefully considered all of the medical evidence in making his decision. (ECF No. 19, at 5-14). Moreover, says the Commissioner, the role of the Court on review is not to reconsider and reweigh the evidence. *Id.* at 9.

1. Whether the ALJ Properly Developed the Record

The ALJ has a duty to develop the record before determining that a claimant is not disabled. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, this duty must be balanced against the fact that the claimant bears the burden of proof up through step four of the evaluation process. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ need not further develop the record. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)). Indeed, "[t]he obligation for an ALJ to develop the record further 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Hyatt v. Astrue*, No.

3:11-cv-681-DPJ-FKB, 2013 WL 527820, at *4 (S.D. Miss. Jan. 25, 2013), *report and recommendation adopted,* No. 3:11-cv-681 DPJ-FKB, 2013 WL 508347 (S.D. Miss. Feb. 11, 2013) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

      i.      Impairments Found Not Severe

Crain argues that "the ALJ failed to adequately discuss and develop the record" concerning his "medically determinable impairments of polyuria, CAD [(coronary artery disease)], neuropathy, shoulder pain, anxiety, and nephropathy (kidney problems)" and, as a result, erroneously found that these medical problems "did not even meet the de minimis threshold of step 2 severity." (ECF No. 18, at 13) (footnotes omitted). Indeed, says Crain, the ALJ "never engaged in any meaningful discussion" of

> (1) limitations in reaching originating from Mr. Crain's right shoulder symptoms[,]
>
> (2) limitations in ambulating emanating from Mr. Crain's neuropathy[,]
>
> (3) limitations in social functioning/concentration arising from Mr. Crain's mental health issues[,] and
>
> (4) limitations concerning the ability to sustain employment … stemming from the fact that Mr. Crain needs to have ready access to a bathroom.

*Id.* at 17-18 (citations omitted). Crain also points out that the ALJ misquoted his diagnosis of nephropathy from some of his medical records as neuropathy (*see* ECF

7

No. 15, at 22-23, 75) and asserts that the ALJ's "finding that Mr. Crain's kidney problems are not severe is inherently flawed" because "the ALJ never properly analyzed this impairment." (ECF No. 18, at 15).

As an initial matter, challenges to the ALJ's findings at step two of the sequential evaluation are perhaps moot once the ALJ finds at least one severe impairment and proceeds beyond step two. This is because the determination of a claimant's RFC requires the ALJ to consider the combined effects of all of the claimant's impairments, regardless of their designation as severe or non-severe. *See* 20 C.F.R. § 404.1545(e); SSR 96-8P, 1996 WL 374184. However, in an abundance of caution, the Court will review Mr. Crain's challenge to the ALJ's step two findings. After reviewing the administrative record, the Court finds these arguments to be without merit.

### Shoulder Pain

No evidence in the administrative record indicates that Mr. Crain suffered from shoulder pain during the relevant period of disability coverage. He stated at the hearing before the ALJ that "at night, I've got pain in my shoulder here and there and stuff," which he said had only started recently as of September 12, 2012. (ECF No. 15, at 90). Moreover, Crain's attorney did not ask him any questions about shoulder pain at the hearing, and the only medical records indicating shoulder pain were from appointments held subsequent to the ALJ hearing. *See id.* at 308, 311-12. Plaintiff points to Dr. Marvin Morgan's findings during the consultative exam from December 11, 2010, stating Dr. Morgan found Mr. Crain to have "decreased

adduction" in his shoulder (ECF No. 18, at 14 n.29), however, this was not the case. Dr. Mogan found that Mr. Crain's shoulder adduction range was 50 degrees and otherwise noted no limitations due to his shoulders. (ECF No. 15, at 244-45). Normal range of shoulder adduction is 45 degrees. *See Normal Ranges of Joint Motion, in* Brad Appleton, *Stretching and Flexibility: Everything You Never Wanted To Know,* MIT.edu (last modified Sept. 1, 1996), http://web.mit.edu/tkd/stretch/stretching_8.html#SEC84. The record was not ambiguous and justified the ALJ's determination that Mr. Crain's shoulder pain was not a severe impairment during the relevant time period.

Mental Health Issues

The lack of any "meaningful discussion" by the ALJ of Mr. Crain's mental health issues reflects the lack of significance attributed to this impairment in his testimony and in the medical records. At the hearing before the ALJ, Crain's only testimony that could possibly relate to mental health issues was in response to his attorney questioning him about whether he has any issues with his memory or concentration ability:

> Q   Do you have any issues with your memory or concentration ability?
> A   Sometimes with this mental stuff, now I've got Shirley, she help me with stuff.
> Q   That would be Shirley King, your friend?
> A   Yeah.
> Q   What does she help you do?
> A   She'll remind me of things.
> Q   Okay. Do you take your medications like you are supposed to?
> A   I been taking it.
> Q   Does anybody remind you of doing that?
> A   She'll make me – sure I do it and remind me to take it.

(ECF No. 15, at 93). Shirley King's affidavit, which is cited in Plaintiff's brief as evidence that Mr. Crain was afflicted with mental health issues, makes no mention of Mr. Crain suffering from any mental health issues. *See id.* at 188. The medical records from Crain's endocrinologist, Dr. Muzzaffar Piracha, indicate "negative for depression and difficulty concentrating" on July 13, 2009, "[p]ositive for nervousness. Negative for depression or difficulty concentrating" on January 31, 2010, and "anxiety, but no sleep disturbances and no depression" on both December 15, 2010 and August 17, 2011. *Id.* at 208, 205, 257, 267. Dr. Piracha did not notate any prescribed treatment plan for nervousness or anxiety during any of these visits. Rather, Dr. Piracha's notes indicate the Crain's "nervousness" and "anxiety" imposed no significant limitations on his ability to function, and the treatment Dr. Piracha prescribed targeted Crain's diabetes and related complications. Moreover, Dr. Piracha's notes from January 24, 2012 indicate "no sleep disturbances, no anxiety, no depression." *Id.* at 272. The Court concludes that substantial evidence supported the ALJ's finding that Mr. Crain's mental health issues did not constitute a severe impairment.

<u>Coronary Artery Disease</u>

The only mentions of CAD in Mr. Cain's medical records simply state that it is one of the diabetic complications affecting Mr. Crain. *See id.* at 261, 266, 271. The "Assessment" and "Plan" sections of Dr. Paratha's notes contain no discussion of CAD, specifically. Moreover, Plaintiff does not explain why the ALJ failed to adequately develop the record on his CAD. Plaintiff simply points to the fact that

Dr. Piracha noted CAD as one of the main complications of his diabetes. The Court cannot say that substantial evidence does not support the ALJ's determination that Mr. Crain's CAD was not a severe impairment.

Polyuria

Polyuria is also a complication of diabetes and is similarly mentioned in passing in the notes of Crain's visits with Dr. Piracha. *See, e.g.*, *id.* at 205, 257, 266. The records from his March 15, 2011 visit indicate "no polyuria." *Id.* at 262. None of these records contain any discussion of polyuria. The ALJ referenced Crain's polyuria throughout his determination of Crain's RFC. *See id.* at 22-24. Because the record is replete with references to Mr. Crain's polyuria, the Court finds that it need not be further developed. Rather, the absence of its further discussion in his medical records supports the ALJ's determination that Mr. Crain's polyuria is not a severe impairment; substantial evidence supports the ALJ's decision.

Neuropathy

Neuropathy, which is another complication of diabetes, is mentioned throughout the notes from Crain's visits with Dr. Piracha. Dr. Pircha noted that Crain reported "numbness and tingling" (presumably in his extremities) on December 15, 2010, but "no peripheral neuropathy" on March 15, 2011, August 17, 2011, and January 24, 2012. *Id.* at 257, 261, 266, 271. Dr. Piracha reported that Mr. Crain had a "normal gait" on May 3, 2005, February 7, 2007, February 13, 2008, July 13, 2009, December 15, 2010, March 15, 2011, and August 17, 2011. *Id.* at 219, 216, 212, 209, 259, 263, 269. Following Mr. Crain's appointment with Dr. Morgan,

the consulting physician, on December 11, 2010, Dr. Morgan noted, "The claimant was able to walk normally although somewhat slowly due to the diabetic neuropathy. Romberg test was positive." *Id.* at 243. Further, he wrote that Crain's neuropathy limited his ability to sit or stand for extensive periods of time, and to walk long distances. *Id.* at 244. The reviewing doctors at the Department of Disability Services (DDS), however, concluded that Dr. Morgan's report indicated that the "overall exam was normal with the exception of [claimant] walking slowly and carefully due to neuropathy." *Id.* at 252. The ALJ made reference to all of this information throughout his analysis of Mr. Crain's disability application and, after weighing the evidence, concluded that Crain's neuropathy was not a severe impairment. *See id.* at 20-26. Accordingly, the ALJ's determination is supported by substantial evidence.

<u>Nephropathy</u>

Although the ALJ did indeed misquote nephropathy as neuropathy in referencing some of Plaintiff's medical records, this linguistic oversight did not taint the ALJ's ultimate analysis. The ALJ identified Crain's allegations of disability due to kidney problems, considered the relevant medical information (his blood pressure readings, creatinine levels, microalbumin levels, and glomerular filtration rate (*see id.* at 20-25)), and noted "the lack of any alleged limitations resulting from kidney … problems" en route to determining that any resulting "impairments as treated" were "not 'severe' within the meaning of the Act." *Id.* at 20-21. The ALJ applied the correct legal standard in making this determination, finding that his kidney

problems "constitute only a slight abnormality having such a minimal effect on him that they would not be expected to interfere with his ability to work." *Id.* at 21; *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.") Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Mr. Crain's nephropathy was not a severe impairment.

    ii.    Credibility Determinations

Plaintiff argues that the ALJ committed legal error by failing to "explicitly consider" his "long and impressive work history," and by failing to mention the statement of Crain's friend, Shirley King. (ECF No. 18, at 19-20). In support of this assertion, Plaintiff cites (1) an opinion by the United States Court of Appeals for the Third Circuit, *Taybron v. Harris*, 667 F.2d 412 (3d Cir. 1981); (2) the Social Security Administration Regulation on "How we evaluate symptoms, including pain;" and (3) the Fifth Circuit opinion in *Gauntley v. Weinberger*, 505 F.2d 943, 945 (5th Cir. 1974). *Id.* The regulation states, "We will consider all of the evidence presented, *including information about your prior work record*, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons." 20 C.F.R. § 404.1529(c)(3) (emphasis added). *Taybron* stands for the proposition that in the Third Circuit, the testimony of a claimant with a long work history should be afforded "substantial

13

credibility." 667 F.2d at 415 n.6. *Gauntley* is cited for the proposition that the ALJ must consider the testimony of lay witnesses about a claimant's pain. The Commissioner responds that Crain's work history and Ms. King's affidavit are just two of the many factors for the ALJ to consider, and the ALJ "is in the best position to assess a claimant's credibility because the ALJ 'enjoys the benefit of perceiving first-hand the claimant at the hearing.'" (ECF No. 19, at 15-16) (quoting *Falco*, 27 F.3d at 164 n.18).

The Court is of the opinion that the ALJ did not commit legal error in failing to explicitly discuss either Mr. Crain's long work history or Ms. King's statement. The Court agrees with the Commissioner that these are just some of the many factors to be weighed by the ALJ. The Fifth Circuit has not adopted the Third Circuit's rule of law cited by Plaintiff and the language of 20 C.F.R. § 404.1529(c)(3) does not mandate that special significance be attributed to a claimant's work history. *See McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL 7456174, at *8–9 (W.D. La. Nov. 26, 2012), *report and recommendation adopted*, No. 2:10-CV-1826, 2013 WL 704624 (W.D. La. Feb. 26, 2013). Moreover, both of these pieces of evidence were clearly before the ALJ at the hearing (*see* ECF No. 15, at 70, 71, 95), and the ALJ determined that this subjective evidence was contradicted by the objective medical evidence in the record. *See, e.g. id.* at 82. Though couched as arguments regarding the development of the record, Plaintiff seems to ask the Court to scrutinize the ALJ's analysis of the evidence. This, of course, is beyond the Court's scope of review. *Bowling*, 36 F.3d at 434 ("[The Court] may not reweigh the

evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." (second alteration in original)).

2. Whether the ALJ Properly Considered and Weighed the Medical Opinion Evidence

Mr. Crain argues that the ALJ improperly weighed the medical opinion evidence by "erroneous[ly] presume[ing] that no treating doctor gave [Mr. Crain] any limitations." (ECF No. 18, at 7). Additionally, Crain argues that the ALJ improperly rejected the opinion from the consulting physician, Dr. Morgan. *Id.* at 10. The Commissioner responds that Plaintiff's argument about the ALJ's supposed erroneous presumption is really an argument about developing the record, and the record indicates that Crain's treating doctor, Dr. Gruich, chose not to render an opinion on Mr. Crain's functional limitations. (ECF No. 19, at 7) With regard to Plaintiff's arguments about Dr. Morgan's opinion, the Commissioner argues that the ALJ's decision to discount Dr. Morgan's opinion was supported by substantial evidence and is the type of determination within the province of the ALJ. *Id.* at 12-14. The Court agrees with the Commissioner.

    i.     No Treating Physician Opinion in the Record

The Commissioner aptly identified that "Plaintiff speculates that Dr. Gruich rendered an opinion on Plaintiff's functional limitations, and that this opinion is missing from the record." *Id.* at 7. At the hearing, the ALJ stated the following without any response or objection from Mr. Crain's attorney:

15

> There is a letter from [Dr. Gruich], but the doctor only mentions that he is treating him for diabetes, Hyperlipidemia, gout, hypertension, and nephropathy.
>
> The doctor did not express an opinion as to any limitations for him or disability and this was after he requested a letter from his doctor supporting disability. So his doctor only mentioned what the doctor was treating him for, but would not go so far as to say – express an opinion, that he had limitations as a result of his medical condition.
> ….
> Then we have, back to Exhibit 3-F, August 14th, 2010, a medical record from Dr. Gruich [phonetic], his treating doctor at that time, noting that his last visit was on March 1st, 2010. His diabetes prognosis is fair, gout prognosis is good. Hypertension prognosis is fair and neuropathy prognosis is fair. But the doctor only gives prognoses. He does not, again, assign any limitations or express any opinion about his capacity to work whatsoever.

(ECF No. 15, at 74-75). Especially in light of the lack of response from Mr. Crain's attorney at the hearing, the absence of an opinion from Dr. Gruich seems to reflect Dr. Gruich's decision not to issue one, rather than – as Plaintiff asserts – evidence that the opinion exists but was omitted from the record. Given that the record otherwise contains sufficient evidence for the ALJ to make an informed decision, the ALJ did not need to further develop the record. *Hernandez*, 269 F. App'x at 515.

    ii.    The ALJ's Decision to Discount Dr. Morgan's Opinion

The determination of Mr. Crain's disability is an issue reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. § 404.1527(e). An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). In the instant case, the ALJ considered Dr. Morgan's opinion, the opinion of the reviewing doctors at DDS, and the evidence in the record, and concluded that

Dr. Morgan's opinion was not supported by the objective evidence. At the hearing, the ALJ stated,

> You know, it appears as though [Dr. Morgan] just listened to what Mr. Crain had to say and based on those subjective comments came up with these limitations, and that is not satisfactory. You know, we don't find that to be acceptable to just merely rely on what a person tells us. There has to be objective evidence to support what a person says.

(ECF No. 15, at 72-73). It was the ALJ's job to weigh the evidence before him, and he determined that Dr. Morgan's opinion was contrary to the objective evidence in the record. The Court's review is limited to whether substantial evidence supports the ALJ's conclusion, and the Court must find so here.

### IV.    RECOMMENDATION

For the reasons stated, the undersigned recommends that Crain's Motion for Summary Judgment (ECF No. 17) be DENIED and the Commissioner's decision be AFFIRMED.

### V.    NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider

frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    **SIGNED,** this the 1st day of August, 2016.

                                           *s/ John C. Gargiulo*
                                           JOHN C. GARGIULO
                                           UNITED STATES MAGISTRATE JUDGE